

U.S. Department of Justice

United States Attorney
Eastern District of New York

MRM:OG
F. #2018R01935

610 Federal Plaza
Central Islip, New York 11722

August 17, 2021

By ECF

The Honorable Denis R. Hurley
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re: United States v. Michael Wustrow
      Criminal Docket No. 19-087 (DRH)

Dear Judge Hurley:

  The government respectfully submits this letter in advance of sentencing in the above-referenced case, currently scheduled for August 27, 2021 at 10:30 a.m. On June 13, 2019, the defendant pleaded guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). In a submission filed under seal on January 27, 2021, the defendant requested a sentence of 60 months' imprisonment, the statutory minimum. See Defendant's Letter dated January 28, 2021, hereinafter ("Def. Ltr."). As set forth more fully below, because the egregious criminal behavior of the defendant extends far beyond the charge to which he pleaded guilty, the government submits that a substantial sentence is warranted in this case. The government respectfully requests that the Court impose a sentence at the high end of the applicable Guidelines range of 151 to 188 months' imprisonment.

I. Background

  The facts underlying the offense conduct in this case are set forth in paragraphs 4 to 16 of the Presentence Investigation Report ("PSR") and the confidential memorandum written under separate cover (the "Conf. Memo"). In June 2016, law enforcement officers acting in an undercover capacity engaged in chats with the defendant via the Kik Messenger program (hereinafter "Kik"), which is an instant messaging service, during which the defendant discussed child pornography and shared images of child pornography with the officer.

The defendant utilized the Kik username "pervdad516."[1] During the chats with the undercover officer, the defendant referenced teenage boys, and asked the undercover officer if he also was interested in young boys. During the course of several chats, the defendant shared several pictures with the undercover officer that depicted nude or semi-nude, pubescent boys, in various states of erection. Examples from the conversations with the undercover officer are as follows:

June 7, 2016

| | |
|---|---|
| The defendant: | Do you ever get to play with younger guys? |
| Undercover: | No. Do you? |
| The defendant: | Yes. 15 & 17 |
| The defendant: | I want to find a father that is willing to rent me his younger son – 12 or 13 |
| The defendant: | There has to be some. |

August 16, 2016:

| | |
|---|---|
| The defendant: | (image shared) He's 16. I met him this week. |

On September 11, 2017, law enforcement officers went to the defendant's residence and the defendant agreed to provide a statement. The defendant acknowledged engaging in conversations with men via Kik regarding sex. Although he admitted to sending and receiving pictures and videos of naked males, he denied sending and receiving child pornography. The defendant admitted using Grindr, a dating application geared to homosexual, bisexual or transgendered individuals, in which he acknowledged searching for "twinks," or what he understood to be men between the ages of 18 and 22 years old. The defendant admitted to discussing "younger stuff" with individuals on Kik and added that although he discussed having sex with a 15-year-old boy, he did not actually engage in sexual contact with the boy.

Following the interview, law enforcement officers seized the defendant's iPhone. Upon searching the phone, law enforcement officers isolated 35 child pornography images of boys that were clearly under the age of 18 and sent these images to the National Center for Missing and Exploited Children. Out of the 35 images, 11 were identified as

---

[1] The government understands the username "pervdad516," to consist of two parts. The "pervdad," part refers to the defendant's self-identification as an older perverted male. The "516," part gives the username a geographical location, as the numbers "516" are associated with an area code for Long Island.

known victims of child pornography. Included in these images was an image of a boy, approximately 6 to 8 years old, being anally penetrated by an adult erect penis. Another image was a male infant with a pacifier in his mouth, his diaper open, and an adult erect penis touching the baby's anus.

   The search of the defendant's phone also revealed conversations in which the defendant solicited others to provide him with child pornography. For example, on September 1, 2016, the defendant wrote on Kik to another user: "Do you have any pics or vids of 3-4-5 playing with daddies?" The sender replied with an attachment depicting a pre-pubescent male toddler with an adult male penis being inserted into his anus. The defendant then asked if the sender had other images of child pornography depicting kids aged 10-12. In another chat, the defendant asked another Kik user his age and if he likes to share "pics," to which the boy responded "15, yes you?" The defendant then stated that he wanted to share pictures as well, and asks the boy if he had "any hair on [his] chest [or] tummy yet?" The boy responded "barely." The defendant asked "can [he] see?"

[redacted]

## II. Guidelines Calculation

   The government submits that the Guidelines calculation in paragraphs 22 through 36 of the PSR should be applied:

| | | |
|---|---|---:|
| | Base Offense Level (§ 2G2.2(a)(2)) | 22 |
| Plus: | Material Involves a Prepubescent Minor (§ 2G2.2(b)(2)) | +2 |
| Plus: | Defendant Distributed In Exchange For Valuable Consideration (§ 2G2.2(b)(3)(B)) | +5 |
| Plus: | Material Involves Sexual Abuse and Exploitation of a Toddler (§ 2G2.2(b)(4)(B)) | +4 |
| Plus: | Use of Computer (§ 2G2.2(b)(6)) | +2 |
| Plus: | Offense Involved at Least 10 Images (§ 2G2.2(b)(7)(A)) | +2 |
| Less: | Acceptance of Responsibility (§ 3E1.1(a) and (b)) | <u>-3</u> |
| Total: | | <u>34</u> |

3

Based on a Criminal History Category of I, this level carries an advisory Guidelines range of 151 months to 188 months' imprisonment. (PSR ¶ 79).

III.     Legal Standard

In United States v. Booker, 125 S. Ct. 738, 743 (2005), which held that the Guidelines are advisory, the Supreme Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining a sentence, but also may tailor the sentence in light of other statutory concerns. See 18 U.S.C. § 3553(a). After Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

In Gall v. United States, 128 S. Ct. 586 (2007), the Supreme Court clarified the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall, 128 S. Ct. at 596 (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. at 596-97 (citation and footnote omitted).

The Second Circuit has specifically repeated Gall's warning that a sentencing court may not presume that a sentence with the Guidelines range is reasonable in the context of the offense Guideline at issue here, U.S.S.G. § 2G2.2. In United States v. Dorvee, the Second Circuit cautioned district courts that while they must consider the advisory Guidelines sentencing range as part of their determination of an appropriate sentence, unlike many other offense guidelines which are designed by the Sentencing Commission based on empirical analysis of past sentencing practices, § 2G2.2 has been repeatedly amended by Congress to make penalties for child pornography offenses harsher, with the result that a large number of the enhancements in § 2G2.2 tend to apply to nearly all child pornography offenders. United States v. Dorvee, 616 F.3d 174, 184-88 (2d Cir. 2010) (describing § 2G2.2 as "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results"). With this note of caution, however, it remains the duty of the sentencing court to determine what weight to give to the advisory Guidelines sentencing range in fashioning a sentence, see id. at 188 ("District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under § 2G2.2"), and "[t]he particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge," United States v. Broxmeyer, 699 F.3d 265, 289 (2d Cir. 2012) (internal quotation marks omitted).

IV.   Argument

The nature and circumstances of this case warrant a substantial sentence. Not only did the defendant share and receive images of children being sexually tortured, he attempted to solicit photographs from a boy he believed to be underage. Even more egregious, the defendant bragged repeatedly about molesting underage teenagers. The PSR outlines numerous examples of such statements, including the following: that he gets to "play" with a 15- and 17-year-old; that he was "setting up some teenage boys to fuck this week,"; that "I had a 16 year old that I literally picked up from HS track and brought him back to my place to fuck BB.[2] He had told me he was 18 and had been fucked before . . . But when I penetrated him I could tell this was new for him." PSR ¶ 6 and ¶ 12. Aside from bragging about molesting teenagers, the defendant indicated that he wanted to find a father that would "rent" to him a 12 or 13 year old boy to molest.

The defendant's bragging about picking up a 16-year-old boy from High School to "fuck" without using a condom is particularly heinous ▇▇▇▇▇▇▇ ▇▇▇▇▇. Even more appalling, the defendant bragged about this type of behavior repeatedly. On or about January 25, 2016, on the Kik messenger application, under the username "pervdad516," the defendant bragged, "This is a 17-years-old I met last week . . . Got to fuck him bareback." PSR ¶ 12.

Most horrifying of all, law enforcement officers interviewed a 17-year-old boy who corroborated the defendant's despicable behavior. PSR ¶ 15. According to the 17-year-old boy, the defendant told the boy ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Id. Unfortunately, the 17-year-old boy confirmed that the defendant convinced him to have sexual intercourse without using a condom.[3] Id.

In another chat, the defendant demonstrates how convinces others to have sex with him without using protection. Specifically, on September 5, 2016, the "defendant told another user that there's no chance we can catch anything if we f*ck bareback. 

---

[2] "BB" is short for "bareback" which refers to sexual intercourse without the use of a condom.

[3] The government does not know whether the defendant was chatting about this specific 17-year-old male or an entirely different 17-year-old. The defendant stated in a chat, "setting up some teenage boys to f*ck this week," thereby indicating that he could have referring to many different teenage boys. PSR ¶ 12.

Given the defendant's bragging about molesting underage boys and the corroboration that he misled a 17-year-old boy ▅▅▅ and convinced him to have sexual intercourse without using a condom, it is likely that the defendant engaged in unprotected sex with other underage males ▅▅▅. This conduct is reprehensible and should weigh heavily into the sentencing considerations as set forth in Section 3553(a). Setting aside the molestation, lying about his ▅▅▅

In his letter to the Court, the defendant admitted ▅▅▅ Def. Ltr., Exhibit 1 at 4. The defendant also stated "[t]he conversations I had on Kik were disgusting and reprehensible, but they were not based on facts." Def. Ltr., Exhibit 1 at 4. The defendant's counsel argued that "chats on the internet are often filled with bravado and hollow truths" and that some of his statements were "bravado and fantasy playing." Def. Ltr. at 25. This Court should reject these arguments. The government submits that these chats cannot be disregarded as mere "fantasy playing." First, the horrific images of child pornography that the defendant shared and received, including pictures of a 6 to 8 year old boy being anally penetrated by an adult erect penis, are very real. PSR ¶ 11. In addition, as described above, the defendant sought <u>real</u> child pornography from a person whom he believed to be 15 years old. But setting aside the horrific images of child sexual torture that the defendant collected, received and shared, the government was able to corroborate at least one of the defendant's claims—that he misled a 17-year-old boy ▅▅▅ and convinced the boy to have sexual intercourse with him without using a condom. Given this corroboration, this Court should

---

4 ▅▅▅

reject entirely that the defendant's claim that his bragging online of his sexual exploits was simply "fantasy playing."

To bolster the defendant's claims that his disturbing chats online were merely "fantasy playing," the defendant argues that despite the "local publicity in both the print and television media" there have not been any credible allegations made against the defendant." Def. Ltr. at 25. This argument should also be rejected. Child USA, a think tank dedicated to protecting kids and preventing abuse, explains that "86% of child sexual abuse goes unreported altogether . . . when victims of child sex abuse do report, a high percentage of them delay disclosure well into adulthood." *Delayed Disclosure, a Factsheet Based on Cutting-Edge Research on Child Sex Abuse*, available at https://childusa.org/wp-content/uploads/2020/04/Delayed-Disclosure-Factsheet-2020.pdf (last visited on August 3, 2021.) To be sure, the government has not identified specific victims of the abuse that the defendant himself bragged about committing. However, given the defendant's own words bragging about molesting teenagers and the high rates of non-disclosure and delayed disclosure of child sex abuse victims, the lack of identified victims provides no support to the defendant's claims that he did not molest children.

The defendant also attempts to minimize his culpability by claiming that his  Def. Ltr., Exhibit 1 at 3. The government rejects entirely the defendant's self-serving statement ███████████████ Accordingly, no credit should be given to the defendant for this attempt to minimize his reprehensible criminal behavior.

In summary, the harmfulness of the defendant's conduct in downloading and sharing child pornography cannot be overstated. "As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse." United States v. Reingold, 731 F.3d 204, 216 (2d Cir. 2013). In this case, the defendant's abhorrent criminal behavior extends far beyond the offense of conviction. Under § 3553(a), when fashioning an appropriate sentence, this Court shall consider the history and characteristics of the defendant as well as the need for the sentence imposed to protect the public from further crime of the defendant. With these considerations in mind, the government submits that a sentence at the high end of the applicable Guidelines range of 151 to 188 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing.

V.   Conclusion

 For all the foregoing reasons, the government respectfully requests that the Court impose a sentence at the high end of the applicable Guidelines range of 151 to 188 months' imprisonment.

 Respectfully submitted,

 JACQUELYN M. KASULIS
 Acting United States Attorney

By:   _____
 Oren Gleich
 Assistant U.S. Attorney
 (631) 715-7889

cc:   Clerk of the Court (DRH) (By E-Mail and ECF)
 Nancy Bartling, Esq. (By E-Mail and ECF)
 Senior U.S. Probation Officer Lisa Langone (By E-Mail)